# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STEVEN J. SAKALA, | ) | CV. NO.  10-00578 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BAC HOME LOANS SERVICING, | ) | |
| LP; ROUTH CRABTREE OLSEN | ) | |
| LAW FIRM; and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER: (1) GRANTING BAC AND MERS'S MOTION TO DISMISS; (2) DENYING PLAINTIFF'S TRO MOTION; (3) DISMISSING COMPLAINT <u>WITHOUT PREJUDICE AS AGAINST ALL DEFENDANTS</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing.  After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS BAC and MERS's Motion to Dismiss (Doc. # 7), GRANTS RCO's Motion for Joinder (Doc. # 16), and DENIES Plaintiff's TRO Motion (Doc. # 31).  The Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants.

<u>BACKGROUND</u>

On February 7, 2007, Plaintiff Steven J. Sakala ("Plaintiff") executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide") in the amount of $910,000.[1] (MTD Ex. B. at 2.) To secure payment on the promissory note, on the same day, Plaintiff executed a mortgage encumbering real property located at 83-1064 Honaunau School Road, Honaunau, Hawaii, 96726 (the "Subject Property") in favor of Countrywide. (<u>Id.</u> at 2–3.) The mortgage was recorded in the State of Hawaii Bureau of Conveyances on February 16, 2007 as Document Number 2007-030068. (<u>Id.</u> at 1.) Countrywide is listed on the mortgage as the originating lender and MERS is the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." (<u>Id.</u> at 2.) On August 8, 2009, MERS executed an assignment, which purported to assign its interest in the mortgage to the Bank of New York Mellon, a New York Corporation, as

_____

[1] BAC and MERS submitted a copy of the subject mortgage as Exhibit B to their Motion to Dismiss. "[A] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" <u>Parrino v. FHP, Inc</u>., 146 F.3d 699, 705 (9th Cir. 1998) (quoting <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994)); <u>see also</u> <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688 (9th Cir. 2001). In the instant case, Plaintiff's entire Complaint revolves around the subject mortgage. The mortgage is clearly essential to the Complaint, and neither party disputes its authenticity. Accordingly, it is appropriate for the Court to consider the mortgage itself when ruling on the Motion to Dismiss.

Trustee for the Benefit of CHL Mortgage Pass-Through Trust 2007-3 Mortgage

Pass-Through Certificates, Series 2007-3 (the "Bank of New York Mellon").

(Compl. Ex. A.)  This assignment was recorded in the State of Hawaii Bureau of

Conveyances on September 17, 2009 as Document Number 2009-142800.  (Id.)

On September 10, 2009, the Bank of New York Mellon moved to foreclose on the

Subject Property.[2]  (MTD Ex. C.)  The foreclosure sale is currently scheduled for

February 24, 2011.  (TRO Motion at 2.)

On September 16, 2010, Plaintiff proceeding pro se filed a Complaint

in Hawaii state court against Defendants BAC Home Loans Servicing, LP

("BAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Routh

Crabtree Olsen ("RCO") (collectively, "Defendants").  ("Compl.," Doc. #1, Ex. A.)

On the same day, Plaintiff also filed in state court a Motion to Stay Foreclosure

(Doc. # 1, Ex. B), which the Hawaii state court denied on September 21, 2010

(Doc. # 1, Ex. D).  On October 6, 2010, Defendants BAC and MERS removed the

action to this Court on the basis of federal question jurisdiction.  (Doc. # 1.)

---

[2] BAC and MERS submitted a copy of the Notice of Mortgagee's Intention
to Foreclose Under the Power of Sale ("Foreclosure Notice") as Exhibit C to their
Motion to Dismiss.  Because Plaintiff's Complaint challenges the validity of the
foreclosure, the Foreclosure Notice is clearly essential to the Complaint, and
neither party disputes its authenticity.  Accordingly, it is appropriate for the Court
to consider the Foreclosure Notice when ruling on the Motion to Dismiss.

Although difficult to discern, the thrust of Plaintiff's Complaint is that because Defendants do not possess the original promissory note, they are not holders in due course and thus they cannot enforce the note. Plaintiff also challenges the "Assignment of Mortgage" from MERS to the Bank of New York Mellon and asserts that he was not notified of this Assignment of Mortgage in violation of TILA.

BAC and MERS filed a Motion to Dismiss, or in the Alternative, For a More Definite Statement on October 12, 2010 ("Motion to Dismiss," Doc. # 7), which Defendant RCO joined on October 28, 2010 (Doc. # 16). On February 3, 2011, Plaintiff filed an Opposition to the Motion to Dismiss. ("MTD Opp'n," Doc. # 30.) BAC and MERS filed a Reply on February 10, 2011. ("MTD Reply," Doc. # 37.)

On February 4, 2011, Plaintiff filed a Motion for Order for Emergency Temporary Restraining Order to Cancel Trustee's Sale Set for February 24, 2011.[3] ("TRO Motion," Doc. # 31.) On February 7, 2011, the Court

---

[3] Plaintiff also filed a Motion to Shorten Time for hearing on the TRO Motion. (Doc. # 32.) BAC and MERS filed an Opposition to the Motion to Shorten Time on February 7, 2011 (Doc. # 34), which RCO joined on February 14, 2011 (Doc. # 38). On February 7, 2011, the Court granted in part and denied in part the Motion to Shorten Time and set the TRO Motion for hearing on February 22, 2011 with the Motion to Dismiss. (Doc. # 35.)

issued an Order setting a briefing schedule for the TRO Motion. (Doc. # 35.) Due to Defendants' opportunity to oppose Plaintiff's TRO Motion, the Court also converted it to one for preliminary injunction. (Id.) BAC and MERS filed an Opposition to the TRO Motion on February 10, 2011. ("TRO Opp'n," Doc. # 36.)

STANDARD OF REVIEW

I.     Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the

formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth."  Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.   See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief.  Id. at 586.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties

and the court." <u>Id.</u> at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally.  <u>See</u> <u>Bernhardt v. Los Angeles County</u>, 339 F.3d 920, 925 (9th Cir. 2003); <u>Jackson v. Carey</u>, 353 F.3d 750, 757 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)).  "Pro se litigants must [nonetheless] follow the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987).

II.     <u>Federal Rule of Civil Procedure 9(b)</u>

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances <u>constituting</u> fraud." <u>In re GlenFed, Inc. Sec. Litig.</u>, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), <u>superseded on other grounds by</u> 15 U.S.C. § 78u-4.

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  Id. at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).  "[T]he circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir. 2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397 (9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state

a claim.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  In

considering a motion to dismiss, the court is not deciding the issue of "whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)

overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

III.    Motion for Preliminary Injunction

        "[I]njunctive relief is an extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter

v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008).  The standard for

granting a preliminary injunction and the standard for granting a temporary

restraining order are identical.  See Haw. Cnty. Green Party v. Clinton, 980 F.

Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P. 65.  To obtain a preliminary

injunction, the moving party must demonstrate "that he is likely to succeed on the

merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the

public interest."  Id. at 365 (citing Munaf v. Geren, 128 S. Ct. 2207, 2218–19

(2008); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v.

Romero-Barcelo, 456 U.S. 305, 311–12 (1982)); see also Stormans, Inc. v.

Selecky, 586 F.3d. 1109, 1126–27 (9th Cir. 2009) (applying heightened standard

mandated by Winter).  "'[S]erious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can [also] support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest."  Alliance for Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010).  A district court has great discretion in determining whether to grant or to deny a temporary restraining order or a preliminary injunction.  See Wildwest Inst. v. Bull, 472 F.3d 587, 589–90 (9th Cir. 2006); see also Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983) ("At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury.  At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor.") (internal citations omitted).

Plaintiffs seeking preliminary injunctive relief must "demonstrate that irreparable injury is likely in the absence of an injunction[,]" the mere possibility of irreparable harm is insufficient.  Winter, 129 S. Ct. at 375 (finding the Ninth Circuit's standard of a "possibility" of harm too lenient).  "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not

10

conjectural or hypothetical; it must be fairly traceable to the challenged action of

the defendant; and it must be likely that a favorable judicial decision will prevent

or redress the injury." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149

(2009).

If irreparable injury is shown, courts must then "'balance the

competing claims of injury and must consider the effect on each party of the

granting or withholding of the requested relief.'" Winter, 129 S. Ct. at 376

(quoting Amoco Prod. Co., 480 U.S. at 542). In assessing whether the plaintiff has

met this burden, the district court has a "'duty . . . to balance the interests of all

parties and weigh the damage to each.'" Stormans, 586 F.3d. at 1138 (quoting

L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1203 (9th

Cir. 1980)).

Finally, the court must weigh the public interest, if any, implicated by

the injunction. Winter, 129 S. Ct. at 374. When the reach of an injunction is

narrow, limited only to the parties, and has no impact on nonparties, the public

interest will be "at most a neutral factor in the analysis rather than one that

favor[s][granting or] denying the preliminary injunction." Bernhardt v. Los

Angeles County, 339 F.3d 920, 931 (9th Cir. 2003). "If, however, the impact of an

injunction reaches beyond the parties, carrying with it a potential for public

consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans, 586 F.3d. at 1139 (citing Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 965 (9th Cir. 2002)). "[When] an injunction is asked [for] which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312–13 (1982). In fact, "courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 129 S. Ct. at 376–77.

DISCUSSION

For the reasons set forth below, the Court concludes that BAC and MERS's Motion to Dismiss should be granted. The Court therefore denies Plaintiff's TRO Motion.

I.      Plaintiff's Opposition to the Motion to Dismiss

As a preliminary matter, the Court observes that Plaintiff's Opposition to the Motion to Dismiss was untimely filed. Although the Opposition was due on or before December 20, 2010 (Doc. # 19), Plaintiff did not file it until February 3, 2011, more than forty days past the Court's deadline. See Local Rule 7.4 ("Any opposition or reply that is untimely filed may be disregarded by the court or

stricken from the record."). Despite its untimeliness, the Court in its discretion will

consider Plaintiff's Opposition, particularly because Plaintiff is proceeding pro se.

Plaintiff is advised, however, that an opposition to a motion to dismiss is not a

proper vehicle for adding claims to his complaint. See Schneider v. Cal. Dep't of

Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a

Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's

moving papers . . . .") (citations omitted); Clegg, 18 F.3d at 754 (finding that for

purposes of a motion to dismiss, the court's review is limited to the contents of the

complaint). In the Opposition, Plaintiff for the first time asserts causes of action

for violation of the Fair Debt Collection Practices Act ("FDCPA") and discharge

by cancellation or renunciation as well as allegations that Defendants violated

additional provisions of Article 3 of the Uniform Commercial Code ("UCC"), not

mentioned in the Complaint. (MTD Opp'n at 9–14.) Plaintiff also appears to

assert for the first time in the Opposition that there was an improper split between

the mortgage and promissory note.[4] (Id. at 4–5, 18–19.) Because the Complaint,

even liberally construed, does not raise any of these claims, they are disregarded

for purposes of ruling on the instant Motion to Dismiss. To the extent that the

---

[4] Plaintiff cites Rinegard-Guirma v. Bank of America, National Association, 2010 WL 3945476 (D. Or. Oct. 6, 2010) in support of his splitting the note claim. (MTD Opp'n at 4–5.)

Opposition raises new allegations of Defendants' purported fraudulent conduct (id. at 16), those contentions are also disregarded.

II.    Motion to Dismiss

BAC and MERS contend that the Complaint is vague and conclusory and therefore should be dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 12(b)(6).  The Court agrees.

Contrary to federal pleading requirements, Plaintiff's Complaint contains scant reference to the facts and transactions that form the basis of this lawsuit, and to the extent that any facts are included in the Complaint, they are couched in terms of accusation and legal conclusion.  For example, the Complaint refers to the September 17, 2009 Assignment of Mortgage from MERS to the Bank of New York Mellon, but only to state that it was "fraudulently" executed and invalid.  (Compl. ¶ IV(6).)  Additionally, the Complaint leaves completely unanswered (1) how each Defendant is related to the mortgage agreement and/or note and the servicing of them; (2) which Defendants allegedly committed the wrongs alleged; (3) when these wrongs were committed; or even (4) the nature of Plaintiff's interest in the real property at issue.  Without these facts, the Complaint cannot possibly survive a motion to dismiss.  See Iqbal, 129 S. Ct. at 1949.

Plaintiff also does not clearly identify the causes of action that he is asserting, and Plaintiff's legal claims themselves are scattered throughout the Complaint. At the outset, the Complaint identifies Article 9 of the UCC as the basis for the lawsuit; asserts unnamed contractual, common law, and statutory duties to take "good and valid" care of the loan documents; and demands inspection of certain specified documents as well as "[a]ny and all documents evidencing public recording of documents by Defendants pursuant to and in accordance with State law requirements of recording transfers of title and/or deeds and/or proof of ownership of real property." (Id. at II–III.) These conclusory allegations and vague assertions, containing no reference to facts or legal authority, do not satisfy federal pleading requirements. See Iqbal, 129 S. Ct. at 1949 (finding that a complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement") (citation and quotation signals omitted). Indeed, the basis for these assertions is entirely unclear to the Court.

The five "claims" set forth in the Complaint are similarly deficient. Those claims include: (1) "The Defendant is not a Note Holder of Due Course"; (2) "[T]he [D]efendants do not have the original wet ink signature Note, nor allonge"; (3) "The Defendants lack Standing as a Creditor in this controversy"; (4) "The Defendants have no Standing to have the right of enforcement"; and (5)

15

"Alteration, Destruction and/or Mutilation of Documents." (Id. ¶ V(1)–(5).)

Within the fourth claim enumerated above, Plaintiff also asserts that "Defendants have violated the new provision in the Truth in Lending Act . . . by not providing the Plaintiff notification of the Assignment of Mortgage, thereby entitling the Plaintiff to triple damages afforded to Mortgagors by TILA for TILA violations." (Id. ¶ V(4)(c).) Aside from this alleged Truth in Lending Act ("TILA") violation, and sporadic references to Article 3 of the UCC, there are no citations to any statutes or other provisions that Defendants allegedly violated. Plaintiff does not even provide the general elements of any legal claim.

For example, Plaintiff appears to assert that because Defendants do not possess the original promissory note, they are not holders in due course and cannot initiate a nonjudicial foreclosure on the Subject Property.[5] Although the Complaint cites Article 3 of the UCC in support of this claim, it seemingly

---

[5] This so-called show me the note theory has been routinely rejected by district courts throughout the Ninth Circuit. Although the Court does not cite unpublished opinions as precedent, the following cases from the District of Hawaii reject the show me the note argument: Krakauer v. IndyMac Mortg. Servs., 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010); Brenner v. Indymac Bank, F.S.B., 2010 WL 4666043, at *7 (D. Haw. Nov. 9, 2010); Angel v. BAC Home Loan Servicing, 2010 WL 4386775, at *10 (D. Haw. Oct. 26, 2010).

references these provisions solely as support for legal conclusions.[6]  Indeed,

Plaintiff asserts in the Complaint that "Defendants are <u>not</u> in fact the Note Holder

of Due Course" pursuant to Hawaii Revised Statute § 490:3-302, but Plaintiff

utterly fails to allege why that is so, other than to state that "Defendants have

altered, destroyed, and/or mutilated" the original promissory note.  (Compl.

¶ V(1)(a).)  The Complaint also refers to Hawaii Revised Statute § 490:3-301,

which governs enforcement of negotiable instruments, but it fails to allege why

Defendants do not fall within the three categories of persons entitled to enforce the

promissory note.  (<u>Id.</u> ¶ V(1)(b)); <u>see</u> Haw. Rev. Stat. § 490:3-301 ("'Person

entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a

nonholder in possession of the instrument who has the rights of a holder, or (iii) a

person not in possession of the instrument who is entitled to enforce the instrument

pursuant to section 490:3-309 or 490:3-418(d).").  Additionally, although Plaintiff

cites Hawaii Revised Statute § 490:3-501(b)(2), which states that a party asked to

make payment on a note may demand that the claimant exhibit the instrument, the

Complaint does not even reference the Hawaii statutes governing nonjudicial

foreclosure, which do not expressly require that the foreclosing party produce a

---

[6] Hawaii, like most states, has adopted the UCC, which is set forth in Hawaii Revised Statutes Chapter 490.  Although the Complaint refers to the UCC itself, the Court will cite to the appropriate section of the Hawaii Revised Statutes.

physical copy of the original promissory note.  See Haw. Rev. Stat. § 667-5 to -10.

In the absence of any factual or legal support for this claim, it cannot withstand a

motion to dismiss.  See Iqbal, 129 S. Ct. at 1949 (stating that although a complaint

need not include "detailed factual allegations," there must be more than an

"unadorned, the-defendant-unlawfully-harmed-me accusation") (citations and

quotation signals omitted).

As to Plaintiff's assertion that the Assignment of Mortgage was

invalid and that Defendants therefore cannot enforce the promissory note, Plaintiff

again fails to allege even the basic elements of a legal claim, much less factual

allegations to support this claim.  At the outset, Plaintiff's conclusion that the

Assignment of Mortgage is invalid "because it is fraudulently signed by a Bank of

America VP rather than by Mortgagee" is completely lacking in any factual or

legal basis.  Aside from the fact that this contention cannot withstand the rigorous

pleading requirements of Federal Rule of Civil Procedure 9, which requires a party

to state with particularity the circumstances constituting fraud or mistake, these

assertions do not give Defendants "fair notice" of the ground for the claim against

them.  Furthermore, although unclear to the Court, it appears that Plaintiff is

attempting to challenge the Bank of New York Mellon's ownership interest in the

mortgage and note, but Plaintiff's allegations only dispute the validity of the

Assignment of Mortgage, in which MERS purportedly relinquished its role as nominee for Countrywide. Because Countrywide is the originating lender, to state a claim for an alleged invalid transfer of the mortgage and note, Plaintiff must at the very least include allegations regarding Countrywide's ownership interest in the loan or debt and the assignment of that interest to the Bank of New York Mellon. Conversely, if Plaintiff is truly attempting to challenge the Assignment of Mortgage from MERS to the Bank of New York Mellon, Plaintiff must provide sufficient facts setting forth the basis of such a claim. Although the Court must liberally construe the Complaint, the conclusory allegations regarding the invalidity of the assignment are simply insufficient to "'state a claim to relief that is plausible on its face.'"[7] Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).

---

[7] In his Opposition to the Motion to Dismiss, Plaintiff relies upon U.S. Bank National Association v. Ibanez, --- N.E.2d ----, 2011 WL 38071 (D. Mass Jan. 7, 2011) for the proposition that "Plaintiff must be allowed to get discovery from Defendants to prove the same improprieties that occurred in the Ibanez case, occurred in this case." (MTD Opp'n at 5–8.) The Court is not persuaded. Aside from the fact that Ibanez is a Massachusetts Supreme Court case applying Massachusetts law, the procedural posture of that case is readily distinguishable from that of the instant lawsuit. In Ibanez, purported assignees, who purchased the subject properties back at the foreclosure sales, filed complaints seeking a declaration that they had title to the properties in fee simple, whereas here, Plaintiff as the borrower has filed a complaint to challenge Defendants' ability to enforce the mortgage and note. These two situations are completely separate and distinct. Thus, Plaintiff's reliance on Ibanez is misplaced.

Plaintiff also attempts to assert a violation of Section 404 of the

Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22, § 404, 123

Stat. 1632, 1649 (2009).  (Compl. ¶¶ IV(8); V(4)(c).)  Section 404 amends the

Truth in Lending Act ("TILA") by adding subsection (g) to 15 U.S.C. § 1641 and

subsection (b) to 15 U.S.C. § 1640.  As amended, TILA requires that if a

"mortgage loan is sold or otherwise transferred or assigned to a third party, the

creditor that is the new owner or assignee of the debt shall notify the borrower in

writing of such transfer" within thirty days.  15 U.S.C. § 1641(g).  Failure to

comply with this notification provision can result in civil liability.  Id. § 1640(a).

In determining the requirements of Section 1641(g), the Court must first consider

the plain meaning of the statute's text.  United States v. Nader, 542 F.3d 713, 717

(9th Cir. 2008) (citing Jonah R. v. Carmona, 446 F.3d 1000, 1005 (9th Cir. 2006)).

When the words of a statute are unambiguous "'judicial inquiry is complete.'"

Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. United

States, 449 U.S. 424, 430 (1981)).  There is no ambiguity in the meaning of

Section 1641(g).  According to its plain language, the notification requirement is

triggered only when the mortgage loan is sold, transferred, or assigned, and even

then, the creditor that is the new owner or assignee of the debt is the party with the

obligation to notify the borrower.  Here, Plaintiff alleges that Defendants—BAC,

MERS, and RCO—violated Section 1641(g) by failing to notify him of the Assignment of Mortgage, but the Complaint contains no allegations to demonstrate that any of these defendants are the "creditor that is the new owner or assignee of the debt" such that the notification requirement would apply. At most, Plaintiff has alleged that the Bank of New York Mellon is an assignee under the Assignment of Mortgage, but the Bank of New York Mellon is not a party to this lawsuit. In the absence of specific allegations showing that any of the defendants had a duty to notify Plaintiff pursuant to Section 1641(g), Plaintiff cannot state a claim for this alleged TILA violation.[8]

Finally, Plaintiff's claim that Defendants have "altered, destroyed, and/or mutilated" specified original documents is so utterly lacking in factual and legal basis that neither Defendants nor the Court can possibly know what cause of action Plaintiff is attempting to assert. Without more, this claim must also be dismissed.

─────────────────

[8] Because of this determination, the Court need not consider BAC and MERS's argument that Plaintiff has failed to state a claim under Section 1641(g) because the Assignment of Mortgage upon which he relies did not transfer any ownership interest in the underlying debt and because Plaintiff has not alleged any transfer of the debt itself. (MTD at 21–22.) The Court also declines to reach BAC and MERS's argument that because the Helping Families Save Their Homes Act of 2009 is not retroactive by its terms, Plaintiff can only state a claim for a violation of Section 1641(g) if Countrywide transferred ownership of the loan on or after May 20, 2009 without notice. (Id. at 22.)

In sum, the Complaint, including only "labels and conclusions," fails to state a claim upon which relief may be granted and fails to provide Defendants notice of the basis of Plaintiff's claims against them. Accordingly, the Court GRANTS BAC and MERS's Motion to Dismiss.

III. TRO Motion

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 129 S. Ct. at 376. As noted, to obtain this relief, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 375. Because the allegations in Plaintiff's Complaint are, at this point, insufficient to state a claim against Defendants, Plaintiff cannot prevail on his TRO Motion. Accordingly, the Court DENIES Plaintiff's the TRO Motion.

IV. Leave to Amend

The Court recognizes that it may be possible for Plaintiff to state a claim if provided the opportunity to amend his Complaint. Accordingly, the Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants in this action with leave to amend no later than 30 days from the filing of this Order.

Failure to do so and to cure the pleading deficiencies will result in dismissal of this action with prejudice. Plaintiff is advised that the amended complaint must clearly state how each of the named defendants have injured him, and it must also clearly identify the statutory provisions, if any, under which Plaintiff's claims are brought.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS BAC and MERS's Motion to Dismiss (Doc. # 7), GRANTS RCO's Motion for Joinder (Doc. # 16), and DENIES Plaintiff's TRO Motion (Doc. # 31). The Complaint is DISMISSED WITHOUT PREJUDICE as against all Defendants.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 22, 2011.

_____
David Alan Ezra
United States District Judge

<u>Sakala v. BAC Home Loans Servicing, LP, et al.</u>, Cv. No. 10-00578 DAE-LEK;
ORDER: (1) GRANTING BAC AND MERS'S MOTION TO DISMISS; (2) DENYING
PLAINTIFF'S TRO MOTION; (3) DISMISSING COMPLAINT WITHOUT PREJUDICE AS
AGAINST ALL DEFENDANTS