IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STEVEN J. SAKALA, | ) | CV. NO.  10-00578 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BAC HOME LOANS SERVICING, | ) | |
| LP; ROUTH CRABTREE OLSEN | ) | |
| LAW FIRM; and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING BAC AND MERS'S MOTION TO DISMISS; (2)
GRANTING RCO'S JOINDER MOTION; AND (3) DISMISSING THE
<u>COMPLAINT WITHOUT PREJUDICE AS TO ALL DEFENDANTS</u>

On October 3, 2011, the Court heard Defendants BAC Home Loans

Servicing, LP ("BAC") and Mortgage Electronic Registration Systems, Inc.'s

("MERS") Motion to Dismiss.  The Court also heard Routh Crabtree Olsen's

("RCO") Motion for Joinder in BAC and MERS' Motion to Dismiss ("Joinder

Motion").  After reviewing the motions and the supporting and opposing

memoranda, the Court **GRANTS** BAC and MERS's Motion to Dismiss (Doc.

# 85) and **GRANTS** RCO's Joinder Motion (Doc. # 86).

BACKGROUND

On February 7, 2007, Plaintiff Steven J. Sakala ("Plaintiff") executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide") in the amount of $910,000.[1] ("MTD," Doc. # 85, Ex. C. at 2.)  To secure payment on the promissory note, on the same day, Plaintiff executed a mortgage encumbering real property located at 83-1064 Honaunau School Road, Honaunau, Hawaii, 96726 (the "Subject Property") in favor of Countrywide.  (Id. at 2–3.)  The mortgage was recorded in the State of Hawaii Bureau of Conveyances on February 16, 2007 as Document Number 2007-030068.  (Id. at 1.)  Countrywide is listed on the mortgage as the originating lender and MERS is the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns."  (Id. at 2.)  On August 8, 2009, MERS executed an assignment, which purported to assign its interest in the mortgage to the Bank of New York Mellon, a New York

_____

[1] BAC and MERS submitted a copy of the subject mortgage as Exhibit C to their Motion to Dismiss.  "[A] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998) (quoting Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)); see also Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).  In the instant case, Plaintiff's entire Complaint revolves around the subject mortgage.  The mortgage is clearly essential to the Complaint, and neither party disputes its authenticity.  Accordingly, it is appropriate for the Court to consider the mortgage itself when ruling on the Motion to Dismiss.

Corporation, as Trustee for the Benefit of CHL Mortgage Pass-Through Trust 2007-3 Mortgage Pass-Through Certificates, Series 2007-3 ("BNY Mellon"). (MTD, Ex. D.)  This assignment was recorded in the State of Hawaii Bureau of Conveyances on September 17, 2009 as Document Number 2009-142800.  (Id.) On September 10, 2009, BNY Mellon moved to foreclose on the Subject Property.[2] (MTD, Ex. E.)

On September 16, 2010, Plaintiff proceeding pro se filed a Complaint in Hawaii state court against Defendants BAC, MERS, and RCO (collectively, "Defendants").  (Doc. # 1, Ex. A.)  On the same day, Plaintiff also filed in state court a Motion to Stay Foreclosure (Doc. # 1, Ex. B), which the Hawaii state court denied on September 21, 2010 (Doc. # 1, Ex. D).  On October 6, 2010, Defendants BAC and MERS removed the action to this Court on the basis of federal question jurisdiction.  (Doc. # 1.)

On October 12, 2010, BAC and MERS filed a Motion to Dismiss, or in the Alternative, For a More Definite Statement.  (Doc. # 7).  On February 22,

_____

[2] BAC and MERS submitted a copy of the Notice of Mortgagee's Intention to Foreclose Under the Power of Sale ("Foreclosure Notice") as Exhibit E to their Motion to Dismiss.  Because Plaintiff's Complaint challenges the validity of the foreclosure, the Foreclosure Notice is clearly essential to the Complaint, and neither party disputes its authenticity.  Accordingly, it is appropriate for the Court to consider the Foreclosure Notice when ruling on the Motion to Dismiss.

2011, the Court issued an Order which granted BAC and MERS's Motion to

Dismiss and dismissed the Complaint without prejudice as against all Defendants.

(Doc. # 40.)

On March 24, 2011, Plaintiff filed an Amended Complaint.[3]  (Doc.

# 45.)  On June 23, 2011, Plaintiff filed a Second Amended Complaint ("SAC").

("SAC," Doc. # 80.)  Plaintiff alleges the following causes of action in the SAC:

- Count I: "Declaratory Relief Against BNY Mellon."  (<u>Id.</u> at

    24–34.)[4]

- Count II: "The Alleged Debt is Settled in Full Under U.C.C.

    § 3-603 and U.C.C. § 3-604; Plaintiff Steven J. Sakala Owes

    Nothing to Defendants; (Against All Defendants)."  (<u>Id.</u> at

    34–39.)

---

[3] On June 20, 2011, Plaintiff sought leave to amend his Amended Complaint. (Doc. # 73.)  On June 22, 2011, United States Magistrate Judge Barry M. Kurren granted Plaintiff's request.  (Doc. # 78.)  This Court thereafter denied as moot Defendants' renewed Motion to Dismiss on June 23, 2011.  (Doc. # 79.)

[4] Plaintiff misnumbers the paragraphs in the SAC beginning on page thirty-nine.  To avoid confusion, the Court will cite to the page numbers rather than paragraph numbers of the SAC.

- Count III:   "Possession of the Original Promissory Note is Necessary; Broken Chain of Title (Against all Defendants)." (<u>Id.</u> at 39–40.)

- Count IV:   "Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendant BAC Home Loans Servicing." (<u>Id.</u> at 40–45.)

- Count V:   "Unfair and Deceptive Acts and Practices against the BAC Defendant."  (<u>Id.</u> at 46–53.)

- Count VI:   "Violation of RESPA 12 USC Section 2605(e) against Defendant BNY Mellon."  (<u>Id.</u> at 53.)

- Count VII:   "Injunctive Relief Against BNY Mellon." (<u>Id.</u> at 53–54.)

Throughout the SAC, Plaintiff also seemingly alleges other "claims." They include claims for: violations of the Helping Families Save Their Homes Act of 2009 against BNY Mellon (<u>id.</u> at 25); Monopolization in violation of the Sherman Act and Hawaii Revised Statutes ("HRS") § 480-9 (<u>id.</u> at 52–54); Punitive Damages (<u>id.</u> at 45–47); emotional distress (<u>id.</u> at 47–48, 53); Fair Debt Collection Practices Act (<u>id.</u> at 38.); Truth in Lending Act ("TILA") (<u>id.</u>); and other various U.C.C. provisions.

On July 11, 2011, BAC and MERS filed their Motion to Dismiss.

(Doc. # 85.)  On July 12, 2011, RCO filed their Joinder Motion.  (Doc. # 86.)  On

August 16, 2011, Plaintiff filed an Opposition.  ("Opp'n," Doc. # 94.)  On August

22, 2011, BAC and MERS filed a Reply.  ("Reply," Doc. # 95.)

STANDARD OF REVIEW

I.      Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  Review is limited to the contents of the

complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  A complaint may be dismissed as a matter of law for one of two reasons:

"(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable

legal claim."  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

1984) (citation omitted).  Allegations of fact in the complaint must be taken as true

and construed in the light most favorable to the plaintiff.  See Livid Holdings Ltd.

v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

A complaint need not include detailed facts to survive a Rule 12(b)(6)

motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In providing grounds for relief, however, a plaintiff must do more than recite the

6

formulaic elements of a cause of action.  See id. at 556–57; see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted).  Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotations and citations omitted).

A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief.  See Twombly, 550 U.S. at 570.  A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. Id. at 586.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties

and the court." Id. at 558 (citation omitted).  If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect") (internal quotations and citations omitted).

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally.  See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." (citation omitted)).  "Pro se litigants must [nonetheless] follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

II.    Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Under Ninth Circuit law, "Rule 9(b) requires particularized allegations of the circumstances constituting fraud."  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc), superseded on other grounds by 15 U.S.C. § 78u-4.

8

In their pleadings, plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  Id. at 1548 (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).  "[T]he circumstances constituting the alleged fraud [must] 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 10104, 1019 (9th Cir. 2001)); see also Moore, 885 F.2d at 540 (finding that Rule 9(b) requires a plaintiff to attribute particular fraudulent statements or acts to individual defendants).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); Walling v. Beverly Enter., 476 F.2d 393, 397 (9th Cir. 1973) (finding that Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state

a claim.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## DISCUSSION

I.   BNY Mellon

As a preliminary matter, Defendants "generally object to the SAC to the extent it attempts to state claims against [BNY Mellon]" because Plaintiff "has not served the SAC, or any other complaint, on [BNY Mellon], and therefore [BNY Mellon] is not a party to this lawsuit."  (MTD at 8.)  In Reply, Defendants argue further that "Plaintiff failed to show that he served [BNY Mellon]" with a Summons.  (Reply at 8.)  As a result, Defendants claim that BNY Mellon is not a party to the lawsuit and Plaintiff has failed to state a claim against it.  (Id. at 9.)

Defendants' assertion is belied by the record.  On March 24, 2011, Plaintiff filed his Amended Complaint in which BNY Mellon was a named defendant for the first time.  (See Doc. # 45.)  Attached to the Complaint is a Certificate of Service which certifies that BNY Mellon was served with the Amended Complaint.  (See Doc. # 45-1.)  Along with the Amended Complaint, a

summons was issued to BNY Mellon.  (See Doc. # 47.)  Plaintiff therefore appears to have complied with Rule 4(c)(1) which requires that a summons be served with a copy of the complaint in order to commence an action against a defendant.  Fed. R. Civ. P. 4(c)(1); see also Fluor Eng'rs and Constructors, Inc. v. S. Pac. Transp. Co., 753 F.2d 444, 449 n.7 (9th Cir. 1985) ("Parties who have not yet appeared to defend an action ought to be afforded the same notice for new or additional claims [provided by Rule 4].").

Once properly served with a complaint and a summons, a party need only serve an amended pleading in accordance with Rule 5.  See Fed. R. Civ. P. 5(a)(B).  "A paper is served [per Rule 5] by . . . mailing it to the person's last known address--in which event service is complete upon mailing."  Fed. R. Civ. P. 5(b)(2)(C).  Here, Plaintiff mailed the SAC to BNY Mellon as evinced by the SAC's attached Certificate of Service.  (Doc. # 80-1.)  Plaintiff was under no obligation to serve another summons on BNY Mellon.  Accordingly, Defendants' contention that Plaintiff has failed to state a claim against BNY Mellon for failing to serve a summons is not persuasive.[5]

---

[5] The Court notes that BNY Mellon has not yet made an appearance in these proceedings.  It may well be that Plaintiff committed some other procedural error in serving BNY Mellon.  Plaintiff may have, for instance, served BNY Mellon at an incorrect address.  That issue, however, is not presently before the Court.

II.     Count I:     "Declaratory Relief Against BNY Mellon"

In Count I, Plaintiff seeks a declaration from this court that "BNY Mellon, in fact, does not have the legal authority to foreclose on the Subject Property" for the following reasons:

• BNY Mellon is not a valid assignee of the Mortgage and therefore has no legal authority to enforce the Mortgage.

• The original Note was never delivered to subsequent purchaser, but rather remained in the possession of Countrywide Homes, thereby clouding any title claims that may arise in respect of the Note.

• The Mortgage was not assigned to BNY Mellon prior to the "Cut-Off Date" of the Trust, in breach of section 2.01 of the Pooling and Servicing Agreement ("PSA") governing the Trust.[6]

(SAC at 24–25.)

As a preliminary matter, the Court notes that these are conclusory allegations not sufficiently supported by fact to withstand a motion to dismiss for

---

[6] The PSA is evidently the governing agreement of the "trust into which Plaintiff's Note was purportedly entered."  (SAC at 33.)

12

failure to comply with Rule 8.  See Iqbal, 129 S. Ct. at 1949 ("[A Complaint]

demands more than an unadorned, the defendant-unlawfully-harmed-me

accusation."); Twombly, 550 U.S. at 555 ("Factual allegations must be enough to

raise a right to relief above the speculative level.").

Moreover, Plaintiff's allegations with respect to Count I relate to

alleged irregularities with the assignment of mortgage and the PSA.  Plaintiff was a

party to neither contract.  In Hawaii, "[g]enereally 'third parties do not have

enforceable contract rights.  The exception to the general rule involves intended

third party beneficiaries.'"  Ass'n of Apartment Owners of Newton Meadows v.

Venture 15, Inc., 167 P.3d 225, 262 (Haw. 2007) (citing Pancakes of Haw., Inc. v.

Pomare Props. Corp., 944 P.2d 97, 106 (Haw. App. 1997)).  "A third party

beneficiary is one for whose benefit a promise is made in contract but who is not a

party to the contract."  Id. (internal citations and omissions omitted).  Absent an

enforceable contract right, a party lacks standing to challenge the validity of the

contract.  See id.; Samsel v. Allstate Ins. Co., 19 P.3d 621, 625 (Ariz. App. 2001

("For a third party to maintain an action on a contract, the contract must have been

entered into for the express benefit of the third party; the party cannot be merely an

incidental beneficiary.") (citations omitted); Palmer v. Bahm, 128 P.3d 1031, 1043

(Mont. 2006) (similar).

Plaintiff here is only a party to the mortgage and the note.  Plaintiff does not allege that he is a party to the assignment or the PSA, nor can he demonstrate otherwise.  (See MTD, Ex. D (assignment listing MERS as assignor and BNY Mellon as assignee); SAC, Ex. 1 (PSA listing parties to the PSA but excluding Plaintiff as a party).  Similarly, Plaintiff has not alleged nor can he prove that he is an intended beneficiary of either the Assignment or the PSA.  Thus, as a stranger to both the PSA and assignment and without any evidence or reason to believe that he was an intended beneficiary of either contract, Plaintiff may not dispute the validity of the PSA or the assignment.[7]  See Livonia Property Holdings, L.L.C. v. 12840-12976 Farmington Road Holdings, LLC, 717 F. Supp. 2d 724, 737 (E.D. Mich. 2010) (holding that a plaintiff who was not and is not a party to any assignments or PSA at issue "lacks standing to challenge their validity or the parties' compliance with those contracts.").

Plaintiff claims that "[t]here is little to no case law in the State of Hawai'i that interprets the role and legal status of MERS" and urges the Court to consider a recent New York Bankruptcy Court Decision.  (SAC at 26; see also Opp'n at 14.)  Plaintiff, however, overlooks controlling 9th Circuit precedent

---

[7]  Further, "the validity of the assignment[] does not effect whether [Plaintiff] owes its obligations, but only to whom [Plaintiff] is obligated."  Livonia, 717 F. Supp. 2d at 737.

14

which plainly details how exactly MERS works and addresses its legal status.  See

Cervantes v. Countrywide Home Loans, Inc., ---F.3d---, 2011 WL 3911031 (9th

Cir. Sept. 7, 2011).  In Cervantes plaintiffs argued that they could amend their

complaint to illustrate that certain "aspects of the MERS system are fraudulent."

Id. at *1.  The Ninth Circuit disagreed.

The Ninth Circuit first outlined how the MERS system functions.  Id.

at *1–2.  The court next described plaintiffs' theory of the case as follows:

> One of the main premises of the plaintiffs' lawsuit here is that the
> MERS system impermissibly "splits" the note and deed by facilitating
> the transfer of the beneficial interest in the loan among lenders while
> maintaining MERS as the nominal holder of the deed.
> The plaintiffs' lawsuit is also premised on the fact that MERS
> does not have a financial interest in the loans, which, according to
> plaintiffs, renders MERS's status as a beneficiary a sham.  MERS is
> not involved in originating the loan, does not have any right to
> payments on the loan, and does not service the loan.  MERS relies on
> its members to have someone on their own staff become a MERS
> officer with the authority to sign documents on behalf of
> MERS . . . As a result, most of the actions taken in MERS's own
> name are carried out by staff at the companies that sell and buy the
> beneficial interest in the loans.

Id. at *2.  Ultimately the Ninth Circuit rejected plaintiffs' arguments.  The court

first found that plaintiffs had "not identified any representations made to them

about the MERS system and its role in their home loans that were false and

material."  Id. at *4.  Nor did the plaintiffs allege with specificity that they "were

misinformed about MERS's role as a beneficiary, or the possibility that their loans would be resold and tracked through the MERS system." Id.  The plaintiffs also "failed to show that the designation of MERS as a beneficiary caused them any injury by, for example, affecting the terms of their loans, their ability to repay the loans, or their obligations as borrowers." Id.

Moreover, the Ninth Circuit also found that plaintiffs' claims were

> undercut by the terms in [the] standard deed of trust, which describe MERS's role in the homeloan.  For example the plaintiffs allege they were defrauded because MERS is a "sham" beneficiary without a financial interest in the loan, yet the disclosures in the deed indicate that MERS is acting "solely as nominee for Lender and Lender's successors and assigns" and holds "only legal title to the interest granted by Borrower in this Security Instrument."  Further, while the plaintiffs indicate that MERS was used to hide who owned the loan, the deed states that the loan or a partial interest in it "can be sold one or more times without prior notice to Borrower," but that "[i]f there is a change in Loan Servicer, Borrower will be given written notice of the change" as required by consumer protection laws.  Finally, the deed indicates that MERS has "the right to foreclose and sell the property."  By signing the deeds of trust, the plaintiffs agreed to the terms and were on notice of the contents. . . . In light of the explicit terms of the standard deed signed by [plaintiffs] it does not appear that the plaintiffs were misinformed about MERS's role in their home loans.

Id. at *5.  Thus, far from concluding that MERS was some sort of sham organization, the Ninth Circuit concluded that MERS was a legitamate

organization and the mortgage which plaintiffs signed put them on notice of the role MERS was to play in their home loans.

The mortgage at issue in the instant case contains identical language to the mortgage at issue in <u>Cervantes</u>.  Specifically, the mortgage put Plaintiff on notice that MERS had "the right to foreclose and sell the property."  (MTD, Ex. C.) The mortgage also provided that MERS was acting "solely as nominee for Lender and Lender's successors and assigns" and holds "only legal title to the interest granted by Borrower in this Security Instrument." (<u>Id.</u> at 12.)  Accordingly, per the mortgage, MERS was granted the right to foreclose on the property on behalf of the lenders in the event of Plaintiff's default.  Plaintiff was aware of MERS's role as he signed the mortgage.  <u>See Cervantes</u>, 2011 WL 3911031 at *5.

Turning now to the relationship between MERS and BNY Mellon, the assignment makes clear that MERS <u>only</u> assigned  MERS's limited right, title and interest in the Mortgage as "nominee" to BNY Mellon.  (<u>See</u> MTD, Ex. D (transferring MERS's "right title and interest" to BNY Mellon.)  In other words, MERS only transferred its own rights to the property, not the entire debt or note. Importantly MERS's rights included "the right to foreclose and sell the Property." (MTD, Ex. C at 4.)  Accordingly, MERS assigned to BNY Mellon the right to foreclose upon and sell the property on behalf of the lenders in the event of a

17

default.  Despite Plaintiff's protestations to the contrary, there is nothing illegal or

unlawful about such an arrangement.

In light of these conclusions regarding the mortgage and assignment,

some of Plaintiff's factual allegations in the SAC are simply false.  For instance,

Plaintiff claims that MERS's nominee status was insufficient to empower MERS to

effectuate a valid assignment of the mortgage and that MERS did not have legal

authority to make the assignment because of a lack of an agency relationship

between MERS and Countrywide.  (SAC at 24–25.)  These allegations presume

that the assignment transferred Countrywide's ownership of the loan or debt.  As

discussed above, MERS only transferred its own interest in the mortgage to BNY

Mellon, not the entire debt.  Importantly MERS's rights included "the right to

foreclose and sell the Property."  (MTD, Ex. C at 4.)  Plaintiff's bald allegations in

the SAC do not change the fact that MERS had the legal authority to transfer its

interest to BNY Mellon and transferred only its own interest to BNY Mellon.

Plaintiff also seems to suggest that because he does not know who

owns his Note, BNY Mellon should be precluded from foreclosing on his property.

The deed states, however, that the loan or a partial interest in it "can be sold one or

more times without prior notice to Borrower," but that "[i]f there is a change in

Loan Servicer, Borrower will be given written notice of the change" as required by

18

consumer protection laws.  None of the Defendants are therefore under any obligation to identify the current owner of the note.[8]  Plaintiff is only entitled to information relating to a change in loan servicers.   Plaintiff has made no allegations with respect to an illegal change in the loan servicer.

In sum, Plaintiff has failed to state a claim for relief in Count I of the SAC.  Specifically, Plaintiff does not have standing to object to the terms of the assignment or PSA as he was neither a party nor an intended third-party beneficiary to either contract.  Moreover, Plaintiff's claim that MERS transferred anything more than its own interest to BNY Mellon—including the right to foreclose—is belied by the record.  Finally, the Ninth Circuit has explicitly found that the factual basis for this Count of the SAC does not give rise to an actionable claim.  Accordingly, Defendants' Motion to Dismiss is **GRANTED** with respect to Count I of the SAC.

---

[8] It is worthy of note, however, that it appears a trust is now the legal owner of the Note.  (See MTD, Ex. E; SAC at 33.)

III.   <u>Count II:</u>   <u>"The Alleged Debt is Settled in Full Under U.C.C. § 3-603 and</u>
<u>U.C.C. § 3-604</u>

Plaintiff's first theory of liability alleged in Count II of the SAC is

that Countrywide sold the promissory note to a third party by writing "PAY TO

THE ORDER OF (            ) WITHOUT RECOURSE" and that this somehow

indicates a discharge of the Plaintiff's obligations under the Mortgage.  (SAC at

35.)  Indeed, according to Plaintiff, by stamping these words on the note

Defendants converted the note to a check, "cashed the check," and "gave Plaintiff

the Federal Reserve Notes as a 'currency exchange' and NOT as a loan."  (<u>Id.</u>)  In

short, Plaintiff contends that the mortgage is not enforceable because the note was

satisfied when it was sold to a third-party.  United States District Judge J. Michael

Seabright was recently presented an identical argument and found as follows:

> Defendants argue that the first mortgage is no longer enforceable
> because the first mortgage note was satisfied when Plaintiff sold it to a
> third party. . . . Defendants' argument is absurd.  The sale of the note
> underlying the first mortgage does not extinguish the debt owed;
> rather the buyer of the note takes the place of the original mortgagee
> and is "vested with all the powers and rights of the [original
> mortgagee]."  <u>Beneficial Haw. Inc. v. Kida</u>, 30 P.3d 895, 920 n.9
> (2001) (quotations omitted).

<u>In re O'Kelley</u>, 420 B.R. 18, 26 (D. Haw. 2009) (footnote omitted).  The Court

here agrees.  It is well established that a sale of a mortgage note does not does not

render the mortgage unenforceable.  See id.; Beneficial Haw. Inc., 30 P.3d at 920 n.9.  Plaintiff's argument that some sort of "currency exchange" took place is meritless.

Plaintiff next claims that he tendered full payment of the alleged debt to BAC and MERS and that their failure to accept tender of the full payment means that the debt is settled in full.  (SAC at 37–39.)  Specifically, Plaintiff claims that "he had unconditionally tendered full payment . . . with a neutral third party escrow agent in exchange for the surrender of the security instrument (Promissory Note) on which payment was demanded."  (SAC at 38.)  According to Plaintiff, "[n]one of the Defendants claimed the full tendered payment.  Under U.C.C. § 3-603, refusal of this legal tender payment, is full settlement of this alleged debt."  (Id.)

Hawaii's version of U.C.C. § 3-603 states that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates."  Haw. Rev. Stat. § 490:3-603(b).

Plaintiff has failed to allege a violation of HRS § 490:3-603(b).  First, it is entirely unclear from the SAC to which Defendant or Defendants Plaintiff

tendered payment, instead Plaintiff baldly asserts that he "notified the Defendant(s)" that he had tendered full payment without specifying which Defendants he notified.  Moreover, the only party entitled to "enforce the instrument" is BNY Mellon, as MERS transferred to BNY Mellon its right to foreclose.  (MTD, Ex. C at 4; id. Ex. D.)  Defendants BAC and MERS cannot be liable under HRS § 490:3-603(b); they do not have the right to "enforce the instrument."

Most importantly, however, Plaintiff's alleged tender was not unconditional.  "A tender is an offer of performance made with the intent to extinguish the obligation."  Arnolds Mgmnt Corp. v. Eischen, 205 Cal. Rptr. 15, 18 (Cal. App. 1984) (citations omitted).  "A tender must be one of full performance . . . and must be unconditional to be valid."  Id.  "'Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount.'"  Robinson v. Bank of America, N.A., 2010 WL 5114738, at *5 (E.D. Cal. 2010.) (citing Rauer's Law etc. Co. v. S. Poctor Co., 181 P.71 (Cal. 1919)).  Here, Plaintiff did not unconditionally tender the amount owed to any defendant.  Instead, he allegedly placed the amount in escrow and agreed only to release it upon "surrender of the security instrument." (SAC at 38.)  Thus, Plaintiff's tender is not valid, even if it had been made to an

22

entity entitled to enforce the loan documents.[9]  Accordingly, Plaintiff's legal theory that Defendants' alleged failure to accept tender resulted in a violation of  U.C.C. § 3-603 such that the debt is forgiven in full is without merit.

Plaintiff, in one paragraph, also re-raises his "show me the note" theory of liability in Count II of the SAC.  (SAC at 38.)  Specifically, Plaintiff asserts that he "demanded production of the Original unaltered instrument" and that Defendants did not respond "as required by law."  (Id.)  The Court addressed this precise allegation in its earlier Order dismissing Plaintiff's Complaint:

> [A]lthough Plaintiff cites Hawaii Revised Statute § 490:3-501(b)(2), which states that a party asked to make payment on a note may demand that the claimant exhibit the instrument, the Complaint does not even reference the Hawaii statutes governing nonjudicial foreclosure, which do not expressly require that the foreclosing party produce a physical copy of the original promissory note.  See Haw. Rev. Stat. § 667-5 to -10. [Moreover,] [i]n the absence of any factual or legal support for this claim, it cannot withstand a motion to dismiss.

(Doc. # 40 at 18–19.)  Plaintiff has failed to correct or expand upon this pleading in the SAC.  Plaintiff has also again failed to proffer an argument relating to the

---

[9] The Court also notes that district courts across the country have time and again rejected Plaintiff's theory that the debt has been settled in full per U.C.C. § 3-603 when a Plaintiff offers payment upon presentment of the promissory note. See, e.g., Potter v. BAC Home Loans Servicing, LP, 2011 WL 2971204, at *6 (D. Nev. July 19, 2011); Hennis v. Trustmark Bank, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010); Santarose v. Aurora Bank, 2010 WL 3064046, at *4 (S.D. Tex. Aug. 3, 2010); Tesi v. Chase Home Finance, 2010 WL 2293177, at *6 (N.D. Tex. June 7, 2010).

nonjudicial foreclosure statutes which do not require that a foreclosing party produce a copy of the original promissory note. Plaintiff has therefore once more failed to state a claim with respect to his "show me the note" theory of liability.[10]

Also in Count II of the Complaint, Plaintiff alleges violations of the Fair Debt Collection Practices Act ("FDCPA") in a single sentence. (SAC at 38.) Plaintiff states that he "demanded verification and validation of the alleged debt" and that Defendants did not respond as required by law. (Id.)

The FDCPA prohibits various collection practices by "debt collectors" to "eliminate abusive debt collection practices." See 15 U.S.C. § 1692(e) (describing the purpose of the FDCPA). The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection

---

[10] Moreover, the Court has grave doubts as to the viability of a "show me the note" theory of liability. Indeed, "[C]ourts have routinely held that Plaintiff's 'show me the note' argument lacks merit." Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1179 (D. Ariz. 2009). Courts in this District have also rejected this theory as a matter of law with regularity. See, e.g., Krakauer v. IndyMac Mortg. Servs., 2010 WL 5174380, at *9 (D. Haw. Dec. 14, 2010); Brenner v. Indymac Bank, FSB, 2010 WL 4666043 (D. Haw. Nov. 9, 2010); Angel v. BAC Home Loan Servicing, LP, 2010 WL 4386775, at * 10 (D. Haw. Oct. 26, 2010). Mansour is particularly instructive here because Arizona's foreclosure statutes, like Hawaii's, do no not require presentation of the original note before commencing foreclosure proceedings. See Ariz. Rev. Stat. § 33-807; Haw. Rev. Stat. § 667-5 to -10. In Mansour, the Court held as a matter of law that a "show me the note" theory of liability was invalid as a matter of law in light of the judicial foreclosure statutes. 618 F. Supp. 2d at 1179.

24

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests . . . .

15 U.S.C. § 1692a(6).  To be liable for a violation of the FDCPA, a defendant must, as a threshold requirement, be a "debt collector" within the meaning of the FDCPA. Heintz v. Jenkins, 514 U.S. 291, 294 (1995).

Here, Plaintiff's conclusory allegation does not sufficiently allege facts suggesting that Defendants are "debt collectors" as contemplated by the FDCPA.  This proposition is not self-evident as district courts across the country have held mortgage servicing companies are not debt collectors liable under the FDCPA.  See Williams v. Countrywide, 504 F. Supp. 2d 176, 190 (S. D. Tex. 2007) ("lenders and mortgage companies are not 'debt collectors' within the meaning of the FDCPA"); Hulse v. Ocwen Fed Bank FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (noting that the "activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA).  Indeed, one important factor in determining whether a "mortgage

25

servicing company" is a "debt collector" is whether "the debt was [] in default at the time it was assigned."  Caraang v. PNC Mortg., ---F. Supp. 2d---, 2011 WL 2470637, at *24 (D. Haw. June 20, 2011) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)).  The Complaint alleges no facts to suggest that any of the Defendants are, in fact, "debt collectors" within the meaning of the FDCPA.

In sum, Plaintiff has failed to state a claim in this Count of the SAC and Defendants' Motion to Dismiss is therefore **GRANTED** with respect to Count II.

IV.    Count III:    "Possession of the Original Promissory Note is Necessary; Broken Chain of Title"

Count III of the SAC seems to allege three distinct theories of liability against Defendants.  First, Plaintiff re-alleges his "show me the note theory." (SAC at 39–40.)  Plaintiff provides no further factual detail relating to this theory, but simply restates that "presentment upon demand of the negotiable instrument must be fulfilled within a reasonable time frame."  (SAC at 40.)  As discussed supra, Plaintiff has failed to state a claim under this theory of liability.

Plaintiff also alleges that "[w]hen the note is split from the mortgage, the note becomes unsecured."  (Id.)  It seems Plaintiff is alleging a "splitting of the

note" theory of liability.  The Ninth Circuit in <u>Cervantes</u> considered and rejected

this argument.  2011 WL 3911031, at *6–7.  Indeed, the Ninth Circuit stated that

> Even if we were to accept the plaintiffs' premises that MERS is a
> sham beneficiary and the note is split from the deed, we would reject
> the plaintiffs' conclusion that, as a necessary consequence, no party
> has the power to foreclose.  The legality of MERS's role as a
> beneficiary may be at issue where MERS initiates a foreclosure in its
> own name, or where the plaintiffs allege a violation of state recording
> and foreclosure statutes based on the designation. . . .
>
> Further, the notes and deeds are not irreparably split: the split only
> renders the mortgage unenforceable if MERS or the trustee, as
> nominal holders of the deeds are not agents of the lenders.

<u>Id.</u> at *7.  Here, neither MERS, nor its successor in interest, BNY Mellon, initiated

a foreclosure sale in its own name.  Instead, BNY Mellon exercised its power of

sale "AS TRUSTEE FOR THE BENEFIT OF CHL MORTGAGE PASS-

THROUGH TRUST."[11]  (MTD, Ex. E.)  BNY Mellon was therefore <u>not</u> initiating a

foreclosure in its own name.  Moreover, the note and deed are <u>not</u> irreparably split

because BNY Mellon is an agent of the lender, the trust "into which Plaintiff's

Note was purportedly entered."  (SAC at 33.)  Nor has Plaintiff alleged any

violation of state recording or foreclosure violations which would otherwise

invalidate the designation.  <u>Cervantes</u>, 2011 WL 3911031, at *7.  In short, the

---

[11] Presumably, this trust was the one established by the PSA discussed <u>supra</u>.
Specifically, it is the "trust into which Plaintiff's Note was purportedly entered."
(SAC at 33.)

factual predicate for Plaintiff's "splitting of the note" theory of liability is not tenable in light of <u>Cervantes</u>.

Finally, Plaintiff seems to reassert his FDCPA theory of liability in Count III of the SAC.  (SAC at 40.)  Plaintiff once more fails to allege sufficient facts to establish that Defendants are "debt collectors" as contemplated by the FDCPA.  The Court therefore again concludes that Plaintiff has failed to state a claim under the FDCPA against Defendants.

In sum, Plaintiffs have failed to state a claim in Count III of the SAC. Defendant's Motion to Dismiss is therefore **GRANTED** with respect to Count III.

V.    <u>Count IV:</u>   <u>"Breach of Implied Covenant of Good Faith and Fair Dealing Against Defendant BAC Home Loans Servicing"</u>

Plaintiff alleges in Count IV that Plaintiff had a "contractual relationship with BAC which "contains an implied covenant of good faith and fair dealing, the breach of which gives rise to the tort of bad faith."  (SAC at 42–43.) Specifically, Plaintiff claims that BAC instructed him to "refrain from making [payments on his promissory note] in order to enroll in the loan modification process."  (<u>Id.</u>)  Plaintiff also claims that BAC "unduly complicated his attempt to obtain the Loan Modification Agreement."  (<u>Id.</u>)  Finally, Plaintiff alleges that

MERS and BNY Mellon breached an unnamed contract with Plaintiff "by attempting to foreclose on the property in violation of Hawaiian Law." (Id.)

This claim asserts the tort of "bad faith." See Best Place v. Penn Am. Ins. Co., 920 P.2d 334, 342 (Haw. 1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract). Although bad faith is an accepted tort where the plaintiff is a party to an insurance contract, the tort has not been recognized in Hawaii based upon a mortgage loan contract. See Jou v. Nat'l Interstate Ins. Co. of Haw., 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [Best Place] requires a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action. See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A ., 459 F. Supp. 2d 1028, 1037–38 (D. Haw. 2006). Hawaii courts have also noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee

Enters., 971 P.2d 707, 711 (Haw. 1999)). It is thus unlikely that Plaintiff could recover for bad faith as alleged in Count IV.

Importantly, even assuming a bad faith tort exists outside the insurance context, it is well-settled that a party cannot breach the covenant of good faith and fair dealing before a contract is formed.  See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir.1998) ("[A]n implied covenant relates only to the performance under an extant contract, and not to any pre-contract conduct."). Hawaii follows this distinction.  See Young v. Allstate Ins. Co., 198 P.3d 666, 690 (Haw. 2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract). Thus, to the extent Count IV's allegations concern pre-contract activities (failing to disclosure terms, failing to conduct proper underwriting, making an improper loan to Plaintiffs), Defendants cannot be liable for bad faith. See id.; see also Larson v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Further, to the extent Plaintiffs are attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a

30

foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" Id. (quoting Price v. Wells Fargo Bank, 261 Cal. Rptr. 735, 742 (1989)). As discussed, BNY Mellon has the proper legal authority to commence foreclosure proceedings against Plaintiff.

Finally, the Court is not convinced that Plaintiffs have pled this Count with sufficient particularity. Specifically, Plaintiff does not specify which law or laws MERS or BNY Mellon are alleged to have violated in foreclosing upon the Subject Property. Nor is it clear which contract or contracts give rise to a duty of good faith and fair dealing that Plaintiff claims Defendants violated. Defendants have not, therefore, been put on sufficient notice of the wrong(s) they are alleged to have committed with respect to this Count. See Twombly, 550 U.S. at 556 n.3 (Rule 8 requires that Defendants be given fair notice of the nature of the claim pled against them).

Plaintiff has therefore failed to state a claim in Count IV of the SAC.

The Court **GRANTS** Defendants' Motion to Dismiss with respect to Count IV.[12]

VI.   Count V:    "Unfair and Deceptive Acts and Practices against the BAC Defendant"

Plaintiff alleges that Defendant BAC engaged in unfair and deceptive trade practices pursuant to HRS § 480-2.  (SAC at 46–53.)

Hawaii Revised Statute section 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Haw. Rev. Stat. § 480-2(a).  "Two distinct causes of action have emerged under [section] 480-2(a): (1) claims alleging unfair methods of competition; and (2) claims alleging unfair or deceptive acts or practices."[13]  Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc., 148 P.3d 1179,

_____

[12] Plaintiff also claims he is entitled to punitive damages for the alleged breach of the duty of good faith and fair dealing.  Given that Plaintiff has failed to state a claim in this Count, he has certainly failed to sufficiently allege he is entitled to punitive damages as well.

[13] Although "[a]ny person" may bring an action for unfair methods of competition in violation of section 480-2, only consumers, the attorney general, or the director of the office of consumer protection may bring an action for unfair or deceptive acts or practices in violation of section 480-2.  Haw. Rev. Stat. § 480-2(d), (e); see also Davis v. Four Seasons Hotel, Ltd., 228 P.3d 303, 307 (Haw. 2010).  A "consumer" is a "natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase

(continued...)

1207 (Haw. 2006); <u>see also</u> <u>Star Markets, Ltd. v. Texaco, Inc.</u>, 945 F. Supp. 1344, 1346 (D. Haw. 1996).  HRS § 481A-3 similarly prohibits "deceptive trade practice[s]."

The crux of Plaintiff's complaint here is that BAC "systematically and purposefully delayed Plaintiff's modification efforts by unfairly closing his file for reasons entirely unrelated to any fault of Plaintiff . . . ."   (SAC at 48.)  It does not appear, however, BAC owed any duty with respect to a loan modification.  Indeed, district courts have held time and again that a loan servicer is under no obligation to modify a loan.  <u>See, e.g.</u>, <u>Phipps v. Wells Fargo bank, N.A.</u>, 2011 WL 302803, at *9 (E.D. Cal. Jan 27, 2011); <u>McCurdy v. Wells Fargo Bank, N.A.</u>, 2010 WL 4102943, at *3 (D. Nev. Oct. 18, 2010); <u>Spoor v. PHH Mortg. Corp.</u>, 2011 WL 883666, at *5 (N.D. W.Va. March 11, 2011); <u>Bridgeman v. United States</u>, 2011 WL 221639, at *14 (E.D. Cal. Jan 21, 2011).

In any event, Plaintiff's Complaint with respect to this Count have utterly failed to satisfy the pleading standards of Rule 8.  There are no facts to support Plaintiff's contention that BAC "systematically and purposefully delayed Plaintiff's modification efforts."  Plaintiff also alleges that BAC "knowingly and

---

[13](...continued)
goods or services or who commits money, property, or services in a personal investment."  Haw. Rev. Stat. § 480-1.

purposefully drew out the modification process so that Plaintiff inevitably ended

up on foreclosure" and that BAC "had no intention of honoring [Plaintiff's]

modification request despite encouraging him to enroll in the process four (4)

times."  Such conclusory allegations without more fail to state a claim under Rule

8.  See Iqbal, 129 S. Ct. at 1949 ("[A Complaint] demands more than an

unadorned, the defendant-unlawfully-harmed-me accusation."); Twombly, 550

U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

speculative level.").  Moreover, to the extent that this count of the SAC alleges

fraudulent conduct, Plaintiff has plainly failed to satisfy the "who, what, where,

when, and how" requirement of Rule 9(b).  Kearns, 567 F.3d at 1120.

Plaintiff also seems to raise an anti-trust claim against BAC per

Section 2 of the Sherman Act, 15 U.S.C. § 2 and the Hawaii Monopolization Act,

HRS § 480-9.  (SAC at 49–52.)  Section 2 of the Sherman Act makes it illegal to

"monopolize, or attempt to monopolize, or combine or conspire with any other

person or persons, to monopolize any part of the trade or commerce among the

several States, or with foreign nations."  15 U.S.C. § 2.  Monopolization and

attempted monopolization are the two traditional claims asserted under Section 2.

To state a claim for monopolization, the plaintiff must sufficiently allege: "'(1) the

possession of monopoly power in the relevant market and (2) the willful

34

acquisition or maintenance of that power as distinguished from growth or

development as a consequence of a superior product, business acumen, or historic

accident.'" John Doe 1 v. Abbott Labs., 571 F.3d 930, 933 n.3 (9th Cir. 2009)

(quoting Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 481

(1992)); Alaska Airlines v. United Airlines, Inc., 948 F.2d 536, 540–41 (9th Cir.

1991) (same); see also MetroNet Servs. Corp. v. Qwest Corp., 383 F.3d 1124, 1130

(9th Cir. 2004) (listing the elements of a monopolization claim).

An antitrust plaintiff must demonstrate that the injury in question is

"injury of the type the antitrust laws were intended to prevent." Brunswick, 429

U.S. at 489.  Indeed, the antitrust laws "were enacted for 'the protection of

competition, not competitors.'" Id. at 488 (quoting Brown, 370 U.S. at 320); see

also Cascade Health Solutions, 515 F.3d at 501–02 (recognizing the Supreme

Court's "long and consistent adherence to the principle that the antitrust laws

protect the process of competition, and not the pursuits of any particular

competitor").  The purpose of the antitrust injury requirement is to "ensure[] that

the harm claimed by the plaintiff corresponds to the rationale for finding a

violation of the antitrust laws in the first place, and it prevents losses that stem

from competition from supporting suits by private plaintiffs for either damages or

equitable relief." Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328,

342 (1990).  As such, "[t]o show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior [because] it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition."  Rebel Oil Co., Inc. v. Atlantic Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) (citing Atlantic Richfield, 495 U.S. at 334); see also Cascade Health Solutions, 515 F.3d at 902 ("'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.'") (quoting Brunswick, 429 U.S. at 489).

The Hawaii Monopolization Act  provides that "[n]o person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize any part of the trade or commerce in any commodity in any section of the State."  Haw. Rev. Stat. § 480-9.  The close relationship between federal antitrust law and Hawaii antitrust law has long been established.  See, e.g., Robert's Hawaii Sch. Bus v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.29 (Haw. 1999) (noting the similarities between Section 2 of the Sherman Antitrust Act and Haw. Rev. Stat. § 480-9.)  Indeed, the "[l]egislative history of

Hawaii's antitrust law clearly indicates that the state laws are to be interpreted and construed in harmony with analogous federal antitrust laws." Island Tobacco Co., Ltd. v. R. J. Reynolds Indus., Inc., 513 F. Supp. 726, 738 (D. Haw. 1981).  Similar to federal law, therefore, Hawaii courts require plaintiffs in antitrust proceedings to plead the "nature of the competition" to "ensure that the injury results from a competition-reducing aspect of the defendant's behavior." Davis v. Four Seasons Hotel Ltd., 228 P.3d 303, 325 (Haw. 2010) (citing and relying on federal law).

Plaintiff has failed to allege there was any antitrust injury. Specifically, Plaintiff has not alleged any facts establishing that any Defendant had a "specific intent to control prices or destroy competition." Rebel Oil, 51 F.3d at 1433.  Nor has Plaintiff demonstrated "predatory or anticompetative conduct directed at accomplishing that purpose" which "attempt[ed] to exclude rivals on some basis other than efficiency." Id.  Plaintiff's allegations instead focus on Defendants' ability to enforce the note, Plaintiff's ability to modify the loan, and third-party purchaser's rights.  (SAC at 52–53.)  Absent any allegation relating to some anticomeptative injury or conduct, Plaintiff has failed to state a claim under either the Sherman Act or the Hawaii Monopolization Act.

Defendants' Motion is therefore **GRANTED** with respect to Count V of the Complaint.

VII.   <u>Count VI</u>:   "<u>Violation of RESPA 12 USC Section 2605(e) against</u>

<u>Defendant BNY Mellon</u>"

Count VI is a three paragraph count which alleges that "Plaintiff

served a Qualified Written Request [("QWR")] to [BAC] for information relating

to the . . . Mortgage. [BAC] failed to serve a timely and/or a complete response on

Plaintiff."  (SAC at 53.)  As a result, according to Plaintiff, Defendants violated the

Real Estate Settlement Procedures Act ("RESPA").  (<u>Id.</u>)

As a preliminary matter, Plaintiff fails to allege that MERS or BNY

Mellon is a loan servicer.  12 U.S.C. § 2605(e)(1)(A), (e)(2) (establishing that per

RESPA only loan servicers have a duty to respond to a QWR).  This alone is

sufficient reason to dismiss this Count of the Complaint against MERS and BNY

Mellon.

In any event, Plaintiff has failed allege the letter he sent qualified as a

QWR.  A correspondence must meet several statutory requirements in order to be

considered a QWR under RESPA.  Specifically, a QWR <u>must relate to information</u>

<u>regarding the servicing of the loan</u>.  12 U.S.C. § 2605(e)(1)(A).  A QWR is a

written request other than notice on a payment coupon or other payment medium

supplied by the servicer.  <u>Id.</u> at § 2605(e)(1)(B).  "The term 'servicing' means

receiving any scheduled periodic payments from a borrower pursuant to the terms

of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Id. at § 2605(i)(3).  The request must provide sufficient information for the servicer to identify the name and account of the borrower.  Id. at § 2605(e)(1)(B)(i).  Finally, a QWR must include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower.  Id. at § 2605(e)(1) (B)(ii).

In the letter Plaintiff sent to Defendants, Plaintiff asks for information relating to the ownership of the loan, rather than the servicing of his loan.  (MTD, Ex. F.)  The letter does not complain of any servicing errors or even mention anything about servicing of the loan.  See 12 U.S.C. § 2605(e)(1)(A) (noting a QWR must relate to information regarding the servicing of the loan).  Accordingly, BAC had no duty to respond to Plaintiff per RESPA.

Even assuming that the letter Plaintiff sent qualified as a QWR as a matter of law, Plaintiff has not sufficiently alleged he was injured by BAC's alleged failure to respond to the QWR.  An individual plaintiff's damages for violations of RESPA's QWR requirements are limited to "actual damages" and, "in the case of a pattern or practice of noncompliance," up to $1,000 in statutory

damages.  12 U.S.C. § 2605(f)(1).  In other words, a RESPA plaintiff must plead and prove that he or she suffered some actual damage as a result of the alleged RESPA violation.  Plaintiff here baldly asserts that he suffered emotional distress from BAC's failure to respond to his QWR.  Without more, however, the Court cannot conclude that Plaintiff has demonstrated "actual damages" as required by statute.[14]

Accordingly, Defendants Motion to Dismiss with respect to Count VI is **GRANTED**.

VIII.   Count VII:   Injunctive relief

Count VII of the Complaint asserts a claim for injunctive relief to prevent Defendants from foreclosing on the Subject Property.  (SAC at 53–54.) Plaintiff's request for injunctive relief appears to be a request for relief derivative of their other claims, and not a standalone claim.  Because the Court finds that all of Plaintiff's claims should be dismissed, and because Plaintiff has failed to allege

---

[14] Indeed, "[n]umerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim."  Molina v. Wash. Mut. Bank, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (collecting cases); see also Copeland v. Lehman Bros. Bank, FSB, 2011 WL 9503, at *3 (S.D. Cal. Jan. 03, 2011).  "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm."  Shepherd v. Am. Home Mortg. Servs., Inc., 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted).

any facts showing that they are entitled to this equitable remedy, the Court finds

that Plaintiff's claim for injunctive relief should be dismissed as well.

Accordingly, the Court **GRANTS** the Motion to Dismiss as to

Plaintiff's claim for injunctive relief.

IX.  <u>Leave to Amend</u>

Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend]

when justice so requires."  Further, "requests for leave should be granted with

extreme liberality."  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 792 (9th Cir.

2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the

complaint could not be saved by an amendment."  <u>Id.</u>  "However, 'liberality in

granting leave to amend is subject to several limitations.'"  <u>Cafasso, U.S. ex rel. v.</u>

<u>Gen. Dynamics C4 Sys.</u>, --- F.3d ---, Nos. 09-16181, 09-16607, 09-17710, 2011

WL 1053366, at *7 (9th Cir. Mar. 24, 2011) (quoting <u>Ascon Props., Inc. v. Mobil</u>

<u>Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989)).  "Those limitations include undue

prejudice to the opposing party, bad faith by the movant, futility, and undue delay."

<u>Id.</u> (citing <u>Ascon Props</u>, 866 F.2d at 1160).  "Further, '[t]he district court's

discretion to deny leave to amend is particularly broad where plaintiff has

previously amended the complaint.'"  <u>Id.</u>  (quoting <u>Ascon Props</u>, 866 F.2d at

1160).

To the extent that Plaintiff is alleging a  "splitting of the note" theory of liability, Plaintiff plainly cannot state a claim for the reasons stated above. Otherwise, the Court recognizes that it may be possible for Plaintiffs to state a claim if provided the opportunity to amend their Complaint.  Thus, to the extent that Plaintiff alleges a "splitting the note" theory of liability in Count III, the Complaint is **DISMISSED**.  Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE** as against all Defendants in this action.[15]  If Plaintiff files another amended Complaint but fails to cure the pleading deficiencies outlined in this Order, the Court will dismiss this action <u>with prejudice</u>.  Plaintiff is advised that the amended complaint <u>must clearly state</u> how each of the named defendants have injured them, and it must also <u>clearly identify</u> the statutory provisions under which Plaintiff's claims are brought consistent with this Order.[16] In granting leave to amend the Court does not here limit Plaintiffs' amended pleading only to the causes of action presently contained in the Complaint—Plaintiff may allege new theories of liability if he so chooses.

---

[15] Plaintiff is advised to take a close look at <u>Cervantes</u> before refiling his Complaint.

[16] The Court also notes that this is Plaintiff's <u>third</u> opportunity to amend his complaint.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** BAC and MERS's

Motion to Dismiss (Doc. # 85) and **GRANTS** RCO's Joinder Motion (Doc. # 86).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 3, 2011.



_____
David Alan Ezra
United States District Judge


<u>Sakala v. BAC Home Loans Servicing, LP, et al.</u>, Cv. No. 10-00578 DAE-LEK;
ORDER: (1) GRANTING BAC AND MERS'S MOTION TO DISMISS; (2)
GRANTING RCO'S JOINDER MOTION; AND (3) DISMISSING THE
COMPLAINT WITHOUT PREJUDICE AS TO ALL DEFENDANTS